Baldwin, J.

The court is of the following opinion : The effect of the deed executed in 1810 by Ralph Wormley the second and his wife to trustees, conveying to them all his property, real and personal, for the purposes therein mentioned, was to create an equitable estate therein in himself and wife during their joint lives *157 and the life of the survivor, with remainder to such children as he should leave at the time of his death; which estate was subject to the payment of his debts, with a full authority to the trustees to sell for that purpose the property conveyed, or any part thereof, whether real or personal, according to their discretion, and apply the proceeds to the discharge of the debts. By the death of the grantor Wormley in 1810, the remainder became vested in his three children, Elizabeth, John and Ralph the third, but did not take effect in possession until the death of the widow. By the death of Elizabeth in 1814, her interest in remainder in the whole property, real and personal, passed to her mother the widow, and to John and Ralph the third her brothers; and by the death of John in 1815, his like interest, embracing that which he had acquired by the death of Elizabeth, passed to his mother the widow, and Ralph the third his brother. And by the death of the widow in 1816, the interests in the remainder which she had acquired by the deaths of her children John and Elizabeth, passed, as to the realty, to her only surviving child Ralph the third, and as to the personalty, to Carter M. Braxton, her surviving second husband and administrator. In 1811, the acting trustee sold a portion of the real property to the amount of 9172 dollars 41 cents, and the proceeds have been applied towards the discharge of the debts. This was a conversion, within the authority and discretion of the trustee, of so much of the realty into personalty; and being made at a time when there was no conflict, but an identity of interest amongst those entitled to the estate, it cannot, by reason of circumstances thereafter arising, furnish any equity for a reimbursement of the realty out of the personalty, or for contribution in favour of the former against the latter. The surplus income of the estate, real and personal, beyond the maintenance of the family, which accrued prior to the death of the widow, has also been *158 applied to the payment of debts; and the record furnishes no information of the respective amounts derived in that way from the realty and personalty. Nor would such information be at all material, the widow being entitled to the profits of the whole estate, subject to the payment of debts, during her life, for the maintenance of herself and family. It follows from these considerations, that upon the questions involved in this cause, it is unnecessary to look back beyond the death of the widow in 1816, to ascertain the relative payments theretofore made out of the realty and personalty, towards the discharge of the debts. And any equity between the parties must arise out of the means respectively furnished for that purpose by the realty and personalty, since that period ; when the succession to the real fell into a different channel from that of the personal property ; Ralph the third then becoming the owner of the whole of the former and two thirds of the latter, and the defendant Braxton, in right of his deceased wife, of the remaining third of the latter. After that period, the authority and discretion of the trustee in regard to sales of the property, whether real or personal, continued as before, and no equity could arise between the realty and personalty for reimbursement of one to the other, neither being primarily, but the whole estate indiscriminately, subjected to payment of the debts by the provisions of the trust deed ; which, and not the principles governing the administration of decedents’ estates, must give the rule upon the subject. An equity of a different nature did, however, arise out of the provisions of the trust deed, so soon as the succession to the realty and the personalty practically fell into different channels : and it was simply this, that the owmers of the realty and personalty should contribute to the burthen of paying the debts remaining unsatisfied at the widow’s death, in proportion to the value of their respective interests; and that the exercise by the trus *159 tee of the authority and discretion vested in him should not have the effect of disturbing the due apportionment of that burthen amongst those several interests. It appears that after full payment of the debts charged upon the estate, there remained of trust moneys, besides the slaves, in the hands of the trustee at the date of the chancellor’s decree of 1837, for distribution, the principal sum of 5165 dollars 78 cents, consisting exclusively of a residue of the hires of the slaves which had accrued from the 1st of January 1829 to the 1st of January 1835. It further appears that in the year 1817, the trustee sold other parts of the real property, to the amount of 3738 dollars 53 cents, which has been applied to the payment of debts, still leaving the tract of land called Rosegill, of which partition was directed by the chancellor’s decree of 1828, amongst the heirs of Ralph Wormley the third, who died in the year 1824. If the plaintiffs, as heirs and distributees of Ralph the third, have any equity against the defendant Braxton's distributive third of the personal property, it must be founded on the fact that the said sum of 3738 dollars 53 cents, applied from the realty towards the payment of the debts, together with the rents and profits of the realty which may have been so applied since mrs. Braxton's death, exceeds the due proportion which ought to have been contributed from the real property and Ralph the third’s distributive two thirds of the personal property, compared with what ought to have been contributed by the defendant Braxton's one third of the latter, having due regard to the value of each interest. That the fact is so is hardly probable, and it ought to have been made appear by the plaintiffs. The record before usdoes not contain the accounts of the trustee prior to the 1st of September 1828; and of course does not furnish the means of ascertaining the rents and profits of the lands and the hires of the slaves, and the proceeds of sales (if any) of slaves and other personal property, which *160 were applied to the payment of debts from the time of mrs. Braxton's death until the 1st of September 1828. For the accounts of the trustee between those periods, reference, it would seem, was had in the court below to a settlerilent by a master commissioner, and the other papers in certain suits brought by creditors of the estate, and which by the chancellor’s decree of 1828 were, with the consent of the parties, directed to be made parts of the record of the present suit. The papers and proceedings in those suits have not been copied into the record before us, though they probably contain the evidence upon which the chancellor held,„ by his decree of 1837, that the money and slaves remaining of the trust fund in the hands of the trustee should be distributed as the personal estate of the deceased infants Elizabeth, John and Ralph Wormley, and which distribution wTas thereby accordingly decreed. If copies of those papers and proceedings could have availed the appellants any thing in their purpose of shewing the said decree to be erroneous, they ought to have suggested a diminution of the record, and brought them up by certiorari. But inasmuch as said papers and proceedings were probably confined to the trust transactions, without furnishing comparative estimates at the proper period, of the value of the lands on the one hand, and of the slaves and other personal property on the other, it would perhaps have been more regular for the chancellor to have directed an account, in the present suit, of the whole trust subject and transactions. Wherefore, though this court perceives no error in the decree for which the same ought to be reversed, and though the appellee Braxton states that he is content therewith, and desires no further account; yet if it is desired by the appellants, and they are willing to incur the risk of a readjustment of the accounts upon the principles above declared, this court will amend the said decree by directing the same.
*161 \_Stanard. I cannot take the responsibility of calling for any new account. Let the decree be affirmed.]
Per cüriam.
The appellants, by their counsel, now declining such an amendment of the decree as was suggested in the opinion of this court, the decree is affirmed with costs, and the cause remanded for the further proceedings contemplated by the decree of the circuit court.